IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARL WHITEHEAD, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:14-cv-51 |
| | ) | |
| v. | ) | |
| | ) | |
| COMMONWEALTH OF | ) | |
| PENNSYLVANIA DEPARTMENT OF | ) | |
| CORRECTIONS SECRETARY JOHN E. | ) | |
| WETZEL; DORINA VARNER; JAMES | ) | |
| C. BARNCLE; DENISE THOMAS; | ) | |
| BARRY GRUBB; GERALD L. ROZUM; | ) | United States District Judge |
| DANIEL GEHLMANN; MELISSA | ) | Kim R. Gibson |
| HAINSWORTH; ALLEN G. JOSEPH; | ) | |
| CAPT. BAKOS; LT. BARBARICH; C/O | ) | |
| COPHENOUR; C/O BOWMAN; C/O | ) | United States Magistrate Judge |
| SLEDGE; LT. CLIPPENGER; DIANE | ) | Cynthia Reed Eddy |
| KOLESOR; JOSEPH DUPONT; LT. | ) | |
| CINKO; C/O EHRHART; JOSEPH | ) | |
| BIANCONI; ROBIN M. LEWIS; DR. | ) | |
| RASHIDA MAHMUD; and DARLENE | ) | |
| CHANEY, sued both jointly and severally | ) | |
| in both their individual and official | ) | |
| capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## I.  RECOMMENDATION

This is a civil rights action initiated by Plaintiff Carl Whitehead, an inmate currently

confined at the State Correctional Institution at Somerset, Pennsylvania.  Plaintiff's amended

complaint (ECF No. 85), which he filed *pro se*, alleges 42 U.S.C. § 1983 violations of his rights

under the First, Eighth, and Fourteenth Amendments of the United States Constitution, as well as

violations of 42 U.S.C. §§ 1985(3) and 1986.[1]  There are currently two pending motions to

---

[1]  The Court notes that on August 6, 2015, the Court entered a Memorandum Opinion and Order
allowing Plaintiff to file an amended complaint after observing that Plaintiff's complaint did not conform
to Rule 20 of the Federal Rules of Civil Procedure.  (ECF No. 82).  The Court found that the allegations

dismiss for failure to state a claim. The first motion was filed by all of the above-captioned Defendants except for Dr. Rashida Mahmud (Commonwealth Defendants). (ECF No. 86). Because Dr. Mahmud is not an employee of the Commonwealth, she filed a separate motion to dismiss. (ECF No. 88). Plaintiff did not respond to either motion despite being advised that failure to respond will result in the motions being decided without the benefit of his response. (ECF No. 90). Accordingly, these motions are ripe for recommendation. For the reasons that follow, it is respectfully recommended that both motions be granted in part and denied in part.

## II.     REPORT

### A.     Factual Background[2]

*Denial of Bottom Bunk Status*

In the beginning of 2011, Plaintiff was incarcerated in Virginia. While there, the treating physician at the jail ordered that Plaintiff be placed on permanent bottom bunk status. A little over a year later, in February 2012, Plaintiff was transferred to SCI-Somerset. When he arrived, non-defendant Lieutenant Boyce assigned Plaintiff to a top bunk "in direct disregard of the

---

in the complaint did not share either common law or fact. When Plaintiff filed his amended complaint, he deleted reference to Defendants Williams, Shafer, Kesterko, Wadsworth, Simosko (listed at ¶ 24 of the original complaint, although not listed in the caption), and Ellison. Accordingly, those Defendants are no longer a part of this action. Additionally, under the liberal construction applicable to Rule 20, the Court finds that although there are still many unrelated claims in the amended complaint, the facts asserted therein arguably arise out of the same series of transactions or occurrences to warrant joinder and consideration of all of these claims.

[2]     For purposes of resolving these motions, the well-pleaded factual allegations in the amended complaint are accepted as true and all reasonable inferences are drawn in a light most favorable to Plaintiff. Phillips v. Cnty of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). Additionally, "[i]n deciding motions under Rule 12(b)(6), courts may consider 'document[s] *integral to or explicitly relied* upon in the complaint,' or any 'undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'" In re Asbestos Prod. Liabl. Litig. (No. VI), — F.3d —, 2016 WL 2849331, *5 n.7 (3d Cir. May 16, 2016) (emphasis in original, internal citations omitted). Accordingly, to the extent that the amended complaint specifically references and discusses any documents by name which Defendants have provided, the Court may refer to and consider those documents. Therefore, citations to the defense exhibits (D.E.) attached by the Commonwealth Defendants at ECF Nos. 50-1 and 50-2, *hereafter*, "D.E. __, ECF No. 50-[1/2] at __."

[previous] medical order." Plaintiff refused to get into the top bunk. Lieutenant Boyce sent Plaintiff to the Restricted Housing Unit (RHU) and issued Plaintiff misconduct B290065. This misconduct was subsequently dismissed with prejudice by the hearing examiner, Defendant Dupont, on February 8, 2012 based on medical information that was received, and Plaintiff was released from the RHU.

On February 11, 2012, Plaintiff sent a request to medical concerning his alleged need to be in the bottom bunk and also for a chest x-ray. On March 25, 2012, Plaintiff sent a request to Defendant Denise Thomas, the Correctional Health Care Administrator at SCI-Somerset. That same day, Defendant Thomas instructed Plaintiff to submit a sick call slip so that $5.00 could be deducted from Plaintiff's account. A few days later, Plaintiff submitted a sick call slip stating that the pain medication was not working. Defendant Thomas responded on May 21, 2012 stating that Plaintiff did not meet the criteria for bottom bunk status. Shortly thereafter, Plaintiff filed a grievance asserting that Defendant Thomas and the SCI-Somerset medical department were being deliberately indifferent to his serious medical needs by making Plaintiff use the top bunk when he had a torn rotator cuff and because the pain medication prescribed was not effective.[3] This grievance was initially denied by non-defendant Gibson. Defendant Rozum and Defendant Varner both upheld the denial of this grievance on appeal.

### *Denial of Off-Site MRI Testing*

Plaintiff also alleges that Defendant Thomas and Defendant Dr. Mahmud, the medical director at SCI-Somerset, conspired to deny Plaintiff access to MRI testing. Plaintiff avers that even though the medical records show that Dr. Mahmud recommended that Plaintiff be given an MRI off-site due to his repeated x-rays and ineffective cortisone shots, Dr. Mahmud was

---

[3]  D.E. 14, ECF No. 50-2 at 27.

deliberately indifferent in failing to follow-up on her recommendation that he be given an MRI off-site. Additionally, Plaintiff claims that budget concerns were the reason that the off-site MRI recommended by Dr. Mahmud was denied.

*Retaliation for Complaint about Guards & Denial of Need for Bottom Bunk*

On December 14, 2012, Plaintiff filed another grievance, this time against Dr. Mahmud and Defendant Thomas alleging deliberate indifference to his medical needs because he was charged excessive fees and co-pays for sick call visits and prescription refills associated with his torn rotator cuff.[4] This grievance was denied by Defendant Joseph on January 10, 2013. Plaintiff claims that Defendants Lieutenant Cinko and Correctional Officer Ehrhart read the denial of this grievance and learned that Plaintiff's rotator cuff was injured and then retaliated against Plaintiff by forcing him to sleep on the top bunk.

Specifically, Plaintiff alleges that on January 8, 2013, he sent a request to the unit manager, Defendant Bianconi, questioning why Plaintiff's name was removed from the block workers waiting list, which was controlled by Defendants Ehrhart and Cinko. Defendant Bianconi responded on January 10, 2010—the same day that Defendant Joseph denied the grievance—stating "Your name may not be being removed [*sic*]. However, just because you are interested does not mean we have to hire. I will be putting out a memo in regards to a change in procedure to ensure everyone is given equal chance for block job." Plaintiff avers that he was retaliated against by Defendants Bianconi, Ehrhart and Cinko five days later, on January 15, 2013, when he was forced to switch from the bottom bunk to the top bunk in his empty cell because they knew about the grievance that he had filed with regard to his rotator cuff. Plaintiff was also informed by Defendant Cinko that an inmate named Johnson was

---

[4] D.E. 15, id. at 40.

being moved to Plaintiff's cell and that Plaintiff was being moved to a different cell, even though Plaintiff alleges that neither Plaintiff nor Johnson had cell mates.

Plaintiff packed all his property in preparation for the transfer to the other cell, but Defendant Ehrhart kept Plaintiff locked in his cell and told Plaintiff to wait for Defendant Cinko to return to the block. Defendant Cinko returned with Defendant Lieutenant Bakos and several security officers who instead escorted Plaintiff to the RHU. Defendant Bakos allegedly gave Defendant Cinko permission to issue Plaintiff Misconduct B516900 which charged Plaintiff with refusing two direct orders to move to the top bunk.[5] Plaintiff was found guilty on this misconduct.[6] However, he maintains that this misconduct was falsified by Cinko and Ehrhart in retaliation for Plaintiff reporting to Defendant Bianconi that they removed Plaintiff's name from the block workers list. Plaintiff also asserts that Cinko and Ehrhart's actions of making Plaintiff use the top bunk constitute deliberate indifference to his serious medical needs.[7]

### *Hunger Strike and $5 Co-Pays*

After Plaintiff was taken to the RHU, he refused to answer any questions, was placed in an RHU observation cell, and started a hunger strike. Once Plaintiff refused nine straight meals, he was removed from the RHU observation cell and transferred to the psychiatric observation cell, where he was charged $5.00 per day from his inmate account. This lasted

---

[5]    DE 16, ECF No. 50-2 at 44.

[6]    D.E. 16, id. at 45-50.

[7]    The amended complaint also contains allegations discussing requests that Plaintiff sent to Defendants Hainsworth and Bianconi, although the relevance of these allegations is unclear. Defendant Hainsworth responded to a request slip on February 1, 2013 discussing an H-code and Plaintiff's escape history. Plaintiff denies having any escape issues. Further, in April 2013, Defendant Bianconi responded to a request slip, refusing to explain why Plaintiff was given an H-code.

from January 18, 2013 until January 21, 2013. Plaintiff alleges that incurring the $5 co-pays per day over this period forced him to stop his hunger strike. These co-pays were inappropriate, according to Plainitff, because he was not given notice that hunger strikes are subject to a $5.00 co-pay and because he did not request or need medical intervention and because he was hydrated. Plaintiff asserts that Defendant Chaney deducted the money from his inmate account and that Defendants Dr. Mahmud and Kolesor authorized said deductions.

<u>*Theft and Destruction of Property during Time in RHU*</u>

On January 25, 2013, Plaintiff was removed from the RHU and taken to inventory his property. Plaintiff saw that a lot of his property was missing and asked Defendant Bowman where the rest of it was. Defendant Bowman told Plaintiff that Plaintiff could only have one footlocker and one commissary bag of property. Plaintiff requested to Defendant Bowman that Plaintiff be able to mail out or place in storage his legal documents, and again questioned where the rest of his property was. At this point, Defendant Bowman began yelling at Plaintiff and removed Plaintiff from the property room and took him back to the RHU cell. Defendant Clippenger then showed up, told Plaintiff he did not want to hear any complaints, and then threatened to transfer Plaintiff from SCI-Somerset to an out-of-state institution.

About an hour later, while Plaintiff was still in the RHU cell, Defendant Bowman approached Plaintiff with an illegible property inventory sheet. Plaintiff filed grievance 445874 on January 26, 2013 relating to this missing commissary property.[8] In this grievance, he also stated that he intended to file a complaint with the Pennsylvania State Police. Additionally, on January 28, 2013, Plaintiff sent Defendant Bianconi a request listing his missing items.

---

[8] D.E. 6, ECF No. 50-1 at 35. The Commonwealth Defendants also note that Plaintiff's original complaint mentioned grievance 447432; however, in the amended complaint, Plaintiff deleted reference to it. As background, this grievance, which does not serve as any basis for the Court's recommendation, simply complains that the inventory sheet provided to Plaintiff was not legible. D.E. 7, <u>id.</u> at 49.

Defendant Bianconi responded on February 10, 2013 stating that Plaintiff's property was transferred to the RHU where the RHU staff completed the inventory form. Plaintiff then submitted a request to Defendant Grubb that same day listing his additional missing property items, and Defendant Grubb responded the next day, February 11, 2013, stating that Defendant Bianconi was looking into Plaintiff's claims. A response to grievance 445874 dated February 10, 2013 and signed by Defendant Barbarich, stated that Plaintiff's remaining property was inventoried, Plaintiff was given a receipt, and that the property was taken to the security office and turned in to Defendant Bakos for disposal.[9] Plaintiff asserts, however, that he did not receive this response until February 27, 2013. Plaintiff appealed the denial of this grievance to Defendant Rozum, who remanded the matter on March 18, 2013 to the major of the guard, Defendant Grubb, to review the items confiscated and determine if they are authorized for retention by the inmate.[10]

On March 26, 2013, Defendant Grubb responded to each point raised in Plaintiff's appeal.[11] Among other things, this response stated that all of Plaintiff's property items were confiscated due to the fact that Plaintiff was "over the allowable amount of property," and that Plaintiff was "given the opportunity to pick and choose the items for disposal but [he] became argumentative and had to be removed from the area." Plaintiff states that Defendant Grubb's response was fabricated and made for purposes of concealing the theft of Plaintiff's property. Plaintiff further alleges that the foregoing statement that Plaintiff was given the opportunity to pick and choose the items for disposal was a lie. Defendant Grubb denied this grievance, finding

---

[9]   D.E. 6, ECF No. 50-1 at 36.

[10]   D.E. 6, id. at 37-38.

[11]   D.E. 6, id. at 40-41.

it frivolous and stating that it was a result of Plaintiff's failure to keep his property at an acceptable level and that prison policy dictated that non-returnable food items had to be destroyed. Defendants Rozum and Varner both separately upheld Defendant Grubb's response denying this remanded grievance.[12]

On March 31, 2013, Plaintiff submitted a request to non-defendant Heidi Sroka, the superintendent's assistant/grievance coordinator, requesting copies of the alleged confiscation slips/receipts mentioned in Defendant Barbarich and Grubb's responses. Ms. Sroka responded April 4, 2013, stating that she did not have the confiscation slips, so Plaintiff would need to contact Defendant Grubb, which Plaintiff did on April 27, 2013. Defendant Grubb responded on May 1, 2013 by providing two confiscation receipts dated January 25, 2013.[13] However, Plaintiff claims, without any supporting factual allegations, that said receipts were forged.

*Retaliation for Sending Letters Complaining about Theft and Destruction of Property*

Furthermore, while grievance 445874 was being appealed and reviewed, Plaintiff sent a letter to Defendant Secretary Wetzel on February 17, 2013 complaining of the alleged property theft committed by Defendants Clippenger, Bowman, Cophenour and Sledge on or around January 25, 2013. Plaintiff also sent a letter with attached exhibits to the Pennsylvania State Police (PSP) on February 18, 2013 complaining of this same incident. On February 22, 2013, PSP forwarded copies of said documents to Defendants Barnacle and Bakos. Defendant Barnacle responded to Plaintiff in writing on March 11, 2013, stating that Plaintiff's allegations were already completely assessed through the DOC's grievance system and that no further action will be taken on those allegations. On March 14, 2013, Plaintiff also sent a letter to the Special

---

[12]  D.E. 6, id. at 46-47.

[13]  D.E. 6, id. at 42-43.

Investigations Unit of the Pennsylvania Attorney General's Office about this alleged property theft by Defendants Clippenger, Cophenour, Bowman, and Sledge, but Plaintiff never received a response on this letter.

On March 20, 2013, Defendant Bakos issued Plaintiff misconduct B588190, which Plaintiff contends was issued in retaliation for sending the above letters pertaining to his missing property. In this misconduct, Plaintiff was charged with violations of the Pennsylvania Crimes Code and several violations of DOC policy, including forgery. The hearing examiner, Defendant Dupont, dismissed this misconduct without prejudice on March 23, 2013. Plaintiff claims that Defendant Dupont then conspired with Defendant Bakos and told Bakos to insert additional charges and provide further explanation for why the misconduct was untimely.

Defendant Bakos then issued misconduct B588194 on March 26, 2013.[14] This misconduct asserted the following:

> On February 17, 2013 [Plaintiff] mailed a letter with 3 attached grievances to the Pennsylvania State Police. PSP returned this information back to SCI-SMR. A review of grievance numbers 444433, 445874, and 447432 were [*sic*] conducted. The following was found: Grievance #444433 and #445874 contained the forged signatures of DSFM Gehlmann and Facility Grievance Coordinator Heidi Sroka. In the case of grievance #447432, the entire grievance was found to be falsified. This Lt. questioned [Plaintiff] on 3-20-2013 at which time [Plaintiff] admitted he did in fact mail the letter and attached grievances to the Pennsylvania State Police.

> Delay in report [was] due to investigation and [misconduct] #588190 being DWOP [dismissed without prejudice]…

Plaintiff asserts that this misconduct was "patently false and written in retaliation for Plaintiff seeking to press criminal charges against correctional officers who robbed him of over $100.00 in property." At the hearing on said misconduct, Plaintiff requested to call three witnesses: Heidi

---

[14]    D.E. 8, id. at 52.

Sroka, Defendant Bakos, and Defendant Gehlman.[15]   Plaintiff wished to have Sroka and Gehlman testify about whether they authorized for their name to be put on those documents and he wished to have Bakos testify about the length and extent of the investigation that was conducted in the matter.   The hearing examiner, Defendant Dupont, however, declined to have any of those witnesses testify, concluding that none of them were needed to determine Plaintiff's guilt or innocence.

After discussing Plaintiff's version of the events, Defendant Dupont found Plaintiff guilty on two charges: (1) forgery and (2) destroying, altering, tampering with, or damaging property. Plaintiff was sanctioned to a total of 180 days of disciplinary custody in the RHU.[16]   Plaintiff appealed the finding of guilt to final review, however, it was upheld at each level.[17]   Plaintiff claims that this sanction was the result of a retaliatory conspiracy between Defendants Bakos and Dupont.   Plaintiff further avers that Defendants Grubb, Hainsworth, and Joseph participated in this conspiracy, as they knew that Defendant Bakos did not conduct any investigations or create any investigative report to justify the delay in issuing the misconduct.   Plaintiff asserts that Defendants Rozum and Lewis, the individuals that upheld the finding of guilty on appeal, are liable under the Fourteenth Amendment for procedural due process and equal protection violations.[18]

Moreover, although Plaintiff alleges no personal involvement of Defendant Secretary Wetzel, aside from failing to respond to the February 2013 letter sent by Plaintiff, the amended

---

[15]   D.E. 8, id. at 53.

[16]   D.E. 8, id. at 54-56.

[17]   D.E. 8, id. at 57-63.

[18]   The Court notes that although Plaintiff identified Defendants Clippenger, Cophenour, Bowman, and Sledge in the letters as the individuals who stole/destroyed his property, Plaintiff does not claim that any of these individuals were involved in any way in the alleged retaliation for sending those letters.

complaint claims that Defendant Wetzel is liable for being aware of and condoning various unconstitutional corruption practices by DOC employees, as well as failing to train and supervise his DOC employees.

**B.    Standard of Review**

1.    Pro se pleadings

*Pro se* pleadings are held to a less stringent standard than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106(1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  As such, a *pro se* complaint pursuant to 42 U.S.C. § 1983 must be construed liberally, Hunterson v. DiSabato, 308 F.3d 236, 243 (3d Cir. 2002), so "as to do substantial justice." Alston v. Parker, 363 F.3d 229, 234 (3d Cir. 2004) (citations omitted).  In other words, if the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or the litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir.1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance").  Notwithstanding this liberality, pro se litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim.  See, e.g., Taylor v. Books A Million, Inc., 296 F.3d 376, 378, (5th Cir. 2002).  Because Plaintiff is a *pro se* litigant, this Court may consider facts and make inferences where it is appropriate.

2.    Rule 12(b)(6) Motions

To survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly,

550 U.S. 544, 570 (2007)). The reviewing court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). Dismissal under Federal Rule of Civil Procedure 12(b)(6) is proper where the factual allegations of the complaint conceivably fail to raise, directly or inferentially, the material elements necessary to obtain relief under a legal theory of recovery. Twombly, 550 U.S. at 561 (citations omitted). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (2009) (citing *Twombly*, 550 U.S. at 555). The factual and legal elements of a claim should be separated, with the court accepting all well-pleaded facts as true and disregarding all legal conclusions. Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010). Under this standard, civil complaints "must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal quotations omitted). A court in making this determination must ask "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." Twombly, 550 U.S. at 583 (quoting Scheuer v. Rhoads, 416 U.S. 232, 236 (1974) (internal quotations omitted)).

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may take into consideration "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record" as well as "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Although a district court may not generally consider matters extraneous to pleadings when ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure

12(b)(6), it may consider documents integral to or explicitly relied upon in a complaint without converting the motion to dismiss into a motion for summary judgment. West Penn Allegheny Health Sys., Inc. v. UPMC, 627 F.3d 85, 97 (3d Cir. 2010); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis added).

### C.    Discussion

The Court will discuss the two pending motions together, as the factual allegations asserted against the Commonwealth Defendants and Dr. Mahud overlap.

#### 1.    Section 1983 Generally – Personal Involvement

To state a viable § 1983 claim, the plaintiff must sufficiently plead that that (1) the conduct complained of was committed by a person acting under the color of state law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.  See Groman v. Twp of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995).  Further, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*."  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (emphasis in original).

As such, to the extent that a plaintiff's allegations against a prison official only involve the prison official reviewing the plaintiff's grievances or appeals from disciplinary proceedings, "[s]uch involvement is insufficient as a matter of law to render those defendants liable," given that "the failure of a prison official to act favorably on an inmate's grievance is not itself a constitutional violation."  Lewis v. Wetzel, — F.Supp.3d —, 2015 WL 9268432, *12 (M.D. Pa. Dec. 21, 2015) (collecting cases); Alexander v. Fritch, 2010 WL 1257709, *15-16 (W.D.Pa. 2010); Mincy v. Chmielswski, 508 Fed. App'x 99, 104 (3d Cir. 2013) ("[A]n officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal

involvement."). Accordingly, all of the § 1983 claims against Defendants Rozum, Varner, Hainsworth, Barbarich, Joseph, Grubb, Barnacle, and Lewis should be dismissed, as the amended complaint contains no well-pled factual allegations against these individuals other than their involvement in the review of Plaintiff's grievances, disciplinary proceedings, and letters, or alternatively, their failure to respond to Plaintiff's letters. See Bullock v. Horn, 2000 WL 1839171, *5 (M.D.Pa. 2000); Okey v. Strebig, 2012 WL 5439042, *8 (M.D.Pa. 2012). Moreover, there are no factual allegations against Defendant Gehlmann suggesting that he was involved in the deprivation of Plaintiff's constitutional rights. Defendant Gehlmann is only mentioned in the amended complaint because Plaintiff was issued a misconduct for allegedly forging his signature and Plaintiff wished to call him as a witness at the misconduct hearing on said charge. As such, Defendant Gehlmann should be dismissed for lack of personal involvement.

Finally, Plaintiff alleges no factual allegations against Defendant Wetzel, the Secretary of the Pennsylvania DOC, other than Wetzel's lack of response to Plaintiff's February 2013 letter to Wetzel complaining that his property was stolen and destroyed. There are simply no factual allegations in the amended complaint to support the conclusory allegations that Wetzel knew of, condoned, acquiesced, or was aware of any unwritten policies involving the actions of his employees which deprived inmates of their constitutional rights or that his purported failure to train and supervise his employees resulted in Plaintiff's alleged constitutional deprivations. Accordingly, Defendant Wetzel should also be dismissed for lack of personal involvement.

2.    Eighth Amendment – Deliberate Indifference to Serious Medical Need

In order for a prisoner to state a cognizable claim concerning conditions of confinement relating to medical care under the Eighth Amendment, he "must allege acts or

omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."
Estelle v. Gamble, 429 U.S. 92, 106 (1976). Because we take the factual allegations as true, we will assume for purposes of this motion only that Plaintiff in fact had a torn rotator cuff, and as such, this injury constitutes an objectively serious medical need. See Oliver v. Pa. D.O.C., 2014 WL 80725, *6 n. 5 (E.D.Pa. 2015) (collecting cases where "[c]ourts have found that a torn rotator cuff presents a serious medical need."). Therefore, the Court's inquiry will focus only on the element of deliberate indifference.

The Supreme Court has characterized "deliberate indifference [as] lying somewhere between the poles of negligence at one end and purpose or knowledge at the other," comparing it to criminal recklessness. Farmer v. Brennan, 511 U.S. 825, 836 & n. 4 (1994). Whether a prison official or medical worker exhibits deliberate indifference is a subjective inquiry. Thus, to be found liable, such an individual must (1) know of and disregard an excessive risk to inmate health or safety; (2) be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and (3) actually draw the inference. Id. at 837. Moreover, the United States Court of Appeals for the Third Circuit has identified the following non-exhaustive "variety of circumstances" where a prison official may be found deliberately indifferent: (1) where he knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) where he delays necessary medical treatment based on a non-medical reason, (3) where he prevents a prisoner from receiving needed or recommended medical treatment, or (4) where he persists in a particular course of treatment in the face of pain and risk of permanent injury. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (citations omitted).

A.     *Denial of Bottom Bunk*

Courts have found that it can be an Eighth Amendment violation where an inmate has a

serious medical need requiring him to use the bottom bunk but the prison officials are deliberately indifferent to that need. See Wall v. Bushman, — Fed. App'x —, 2015 WL 9301346, at *2 (3d Cir. Dec. 22, 2015); Guilfoil v. Pierce, 2009 WL 688957, *5 (D. Del. 2009) ("Refusal of prison officials to assign an inmate with a herniated disc to a bottom bunk may constitute deliberate indifference if the inmate's condition is sufficiently serious."). Here, Plaintiff alleges that on two different occasions, prison officials were deliberately indifferent to his need to use the bottom bunk due to his torn rotator cuff.

First, he asserts that Defendant Thomas was deliberately indifferent to his need for bottom bunk status in 2012. Defendant Thomas allegedly denied Plaintiff's request for bottom bunk on May 21, 2012 stating that Plaintiff did not meet the criteria for bottom bunk status even though, according to Plaintiff, she knew that he in fact met the criteria and was allegedly under an order to be in the bottom bunk. Although Plaintiff may not ultimately prevail on this claim against Defendant Thomas once the factual record is developed, the Court finds that when accepting the factual allegations in the amended complaint as true and when drawing all reasonable inferences in a light most favorable to Plaintiff, the amended complaint contains sufficient allegations to withstand the Commonwealth Defendant's motion to dismiss this claim against Defendant Thomas.[19]

Second, Plaintiff alleges that Defendants Cinko and Ehrhart were deliberately indifferent to his need to use the bottom bunk when they allegedly retaliated against him after Plaintiff sent a request to Defendant Bianconi questioning why Cinko and Ehrhart removed Plaintiff's name from the workers list. Defendants Cinko and Ehrhart, after learning of Plaintiff's shoulder injury

_____

[19] The Court acknowledges that the Commonwealth Defendants contend that Plaintiff was given bottom bunk status when needed and that it was revoked when it was no longer necessary. These arguments, however, are in direct conflict with the allegations in the amended complaint, and thus, are better left for summary judgment.

and request to use the bottom bunk, allegedly unnecessarily transferred Plaintiff to a different cell and ordered him to use a top bunk.  Plaintiff also alleges that Defendant Bianconi knew that Plaintiff should not be placed in the top bunk due to Plaintiff's serious medical need but Defendant Bianconi disregarded that need and actually ordered that Plaintiff be placed in this top bunk.  At this stage, in light of the liberal pleading standards afforded to *pro se* litigants, the Court finds that these allegations are sufficient to withstand a motion to dismiss and that the factual record needs further development. Accordingly, the Commonwealth Defendants' motion as to Defendants Cinko, Ehrhart, and Bianconi on this claim should be denied.

### B.    *Denial of Off-Site MRI*

Plaintiff claims that Defendants Thomas and Dr. Mahmud are liable for failing to schedule an off-site MRI.  Plaintiff asserts that Dr. Mahmud recommended that an off-site MRI be given because the numerous x-rays and cortisone shots were ineffective.   Plaintiff alleges that Dr. Mahmud is liable for failing to follow-up on this recommendation.   He also alleges that Defendant Thomas is liable for refusing to follow this recommendation, and that the two conspired to make sure that this did not occur.[20]   Although there are few supporting factual allegations as to this claim, the Court finds that the factual record surrounding this issue should be developed further in light of Plaintiff's allegations that a specific medical recommendation was not provided to Plaintiff.  See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993) (if the failure to provide adequate care was deliberate, and motivated by non-medical factors, then the prisoner may have a viable claim against the prison doctor); Inmates of Allegheny Cnty Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (it can be an Eighth Amendment violation where prison authorities prevent an inmate from receiving recommended medical treatment for serious

---

[20]    As discussed *infra*, Plaintiff's allegations that Defendants Thomas and Dr. Mahmud engaged in a conspiracy fail to state a claim under 42 U.S.C. §§ 1985(3) and 1986.

medical needs). Defendants' arguments here are better suited for summary judgment, and accordingly, the Court recommends denying their motions with respect to this claim as to Defendants Thomas and Dr. Mahmud.

C. *Deduction of $5.00 Co-Pays*

Plaintiff's claim that Defendants Dr. Mahud, Chaney, and Kolesor committed an Eighth Amendment violation when they collectively authorized and withdrew $5.00 per day from Plaintiff's inmate account during a four day period, totaling $20.00, is without merit. Deducting money from Plaintiff's account during his hunger strike cannot be considered deliberate indifference to his serious medical needs, as he was being monitored, not ignored. See Austin v. Tennis, 381 Fed. App'x 128, 133 (3d Cir. 2010) (monitoring of inmate during hunger strike is not a violation of the Eighth Amendment). Further, as discussed below, said medical co-pay deductions did not violate the First Amendment or the Due Process Clause of the Fourteenth Amendment.

3. First Amendment Retaliation Claims

When liberally construing the amended complaint, the Court discerns three separate incidents in which Plaintiff is alleging First Amendment retaliation claims: (1) when Defendants Dr. Mahmud, Chaney, and Kolesor collectively authorized and deducted $5.00 per day from Plaintiff's inmate account during his hunger strike; (2) when Plaintiff was issued and found guilty on misconduct B516900 for refusing to obey orders to get into the top bunk; and (3) when Plaintiff was issued and found guilty on misconduct B588194 for mailing letters and allegedly forged grievances to the PSP complaining about the destruction and theft of his property.

In order to set forth a *prima facie* claim for First Amendment retaliation, the plaintiff must allege (1) that he was engaged in constitutionally protected conduct, (2) that prison officials

caused him to suffer an adverse action, and (3) that his constitutionally protected conduct was a substantial or motivating factor in the officials' decision to discipline him. <u>Rauser v. Horn</u>, 241 F.3d 330, 333 (3d Cir. 2001). However, "prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." <u>Id.</u> at 334.

Plaintiff fails to state a claim with respect to his allegations that it was retaliation when he was charged a $5.00 co-pay for his purported protected activity of participating in a hunger strike. Indeed, the United States Court of Appeals for the Third Circuit has expressly held that the DOC's policy of placing inmates who refuse to eat or drink in the psychiatric observation cell for their own safety is a "patently appropriate response taken pursuant to a well-reasoned institutional policy." <u>Mincy v. Klem</u>, 277 Fed. App'x 239, 243-44 (3d Cir. 2008). This is precisely what Plaintiff alleges occurred here. The fact that Plaintiff was charged these daily $5 co-pay fees in exchange for receiving "the benefit of health care, the value of which undoubtedly exceeds the modest fees assessed," does not convert this scenario into a First Amendment retaliation violation. <u>See</u> <u>Dockery v. Beard</u>, 509 Fed. App'x 107, 114 (3d Cir. 2013). Accordingly, this First Amendment retaliation claim against Defendants Dr. Mahmud, Chaney, and Kolesor should be dismissed.

The Court finds, however, that the other two incidents involving the misconducts for refusing orders to get in the top bunk and for sending letters to the PSP complaining of his theft are better suited to be assessed on a fully-developed record at the summary judgment stage. Commonwealth Defendants argue that findings of guilt at such disciplinary proceedings foreclose a plaintiff's First Amendment retaliation claim. This is only true, however, where there is "some evidence" supporting the findings of guilt. <u>See</u> <u>Nifas v. Beard</u>, 374 Fed. App'x

241, 244 (3d Cir. 2010); see also Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002) (although the prisoner asserted that he was retaliated against for jailhouse lawyering, he was charged with a misconduct for undisputed violations of prison policies, and thus, appropriately faced discipline). Commonwealth Defendants' argument here that this claim is barred because Plaintiff was found guilty on the misconducts is an affirmative defense. Bonaparte v. Beck, 441 Fed. App'x 830, 833 (3d Cir. 2011). Thus, it would be premature to dismiss this claim at this stage without giving Plaintiff the chance to present evidence rebutting that he was in fact guilty on these misconducts. Id. at 832-33; see also Crosby v. Piazza, 465 Fed. App'x 168, 173 (3d Cir. 2012) (finding error in the district court's consideration of defenses at the 12(b)(6) stage in the prisoner's First Amendment retaliation claim). Therefore, while Defendants may ultimately prevail on summary judgment on these claims, it would be inappropriate for this Court to dismiss them at this time.

In sum, Plaintiff's First Amendment retaliation claim regarding misconduct B516900 involving Defendants Cinko, Ehrhart, Bianconi, Bakos, and Dupont should not be dismissed for failure to state a claim. Nor should Plaintiff's First Amendment retaliation claim regarding misconduct B588194 involving Defendants Bakos and Dupont.[21]

### 4. Fourteenth Amendment – Procedural Due Process Clause

The Fourteenth Amendment of the United States Constitution provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "Thus, to establish a claim under the Due Process Clause, a plaintiff must show that he had a protected liberty or property interest of which he has been deprived, and that the process afforded him did not comport with constitutional requirements." Ray v. Rogers,

---

[21]     As discussed at note 18, *supra*, Defendants Clippenger, Cophenour, Bowman, and Sledge are not included in this claim.

2014 WL 1235905, *3 (W.D.Pa. 2014) (citing <u>Shoats v. Horn</u>, 213 F.3d 140, 143 (3d Cir. 2000)). "[A]n unauthorized intentional deprivation" of an inmate's property by prison officials "does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." <u>Hudson v. Palmer</u>, 468 U.S. 517, 533 (1984). The United States Court of Appeals for the Third Circuit has consistently held that the availability of the prison's grievance procedure is a meaningful postdeprivation remedy. <u>See</u>, <u>e.g.</u>, <u>Tillman v. Lebanon Cty. Corr. Fac.</u>, 221 F.3d 410, 422 (3d Cir. 2000) (the prison's grievance program, which allowed prisoners to complain about any matter that is unjust and provided for direct appeal to the warden, was an adequate postdeprivation remedy); <u>Petko v. Radle</u>, 593 Fed. App'x 94, 96 (3d Cir. 2014) ("[The plaintiff] received due process because he had access to and took advantage of an adequate post-deprivation remedy – the Pennsylvania D.O.C.'s grievance procedure."); <u>Crosby v. Piazza</u>, 665 Fed. App'x 168, 172 (3d Cir. 2012) ("Adequate remedies were available here as [the plaintiff] was provided an opportunity to file an administrative grievance.").

Because Plaintiff alleges in his amended complaint that he had access to and took advantage of the prison grievance system after his property went missing during his time in the RHU in January 2013, Plaintiff cannot state a claim under the Procedural Due Process Clause of the Fourteenth Amendment against any of the remaining Defendants allegedly involved in this incident – Bowman, Clippenger, Bianconi, Cophenour, Sledge, and Bakos.

Furthermore, the United States Court of Appeals for the Third Circuit has specifically held that the deduction of $5.00 per day from an inmate's account as a medical co-pay because of monitoring during his participation in a hunger strike does not violate the Due Process Clause of the Fourteenth Amendment where, as here, the inmate had access to the prison grievance

system.  <u>Dockery</u>, 509 Fed. App'x at 114.  The amended complaint expressly states that Plaintiff had filed several grievances in this case relating to a variety of issues, including a grievance complaining about excessive co-pays for sick call visits and prescription refills.  The amended complaint asserts that during this general time period, Plaintiff was able to send several letters and file a grievance.[22]  Therefore, because Plaintiff had access to the prison grievance system after these co-pays were deducted from his account, Plaintiff had access to a meaningful post-deprivation remedy, and consequently, this claim against Defendants Dr. Mahmud, Kolesor, and Chaney fails as a matter of law.

Additionally, given Plaintiff's status as a *pro se* litigant, the Court will address whether he has stated a claim for a procedural due process violation relating to his misconduct hearings, even though the amended complaint does not explicitly identify such a claim, as his factual allegations suggest that he may be attempting to do so.  Assuming *arguendo* that Plaintiff has properly raised this claim, it still fails as a matter of law because he has not identified a protected liberty interest.

Plaintiff faced ten days in the RHU regarding the first misconduct and 180 days in the RHU regarding the second misconduct.  Neither of these sanctions, by themselves, implicate a protected liberty interest.  <u>See</u>, <u>e.g.</u>, <u>Griffin v. Vaughn</u>, 112 F.3d 703, 708 (3d Cir. 1997) (15 months in administrative custody did not implicate protected liberty interest); <u>Young v. Beard</u>, 277 Fed. App'x 138, 141 (3d Cir. 2007) (930 days in disciplinary confinement did not implicate protected liberty interest).  Furthermore, the amended complaint does not allege any other facts supporting the conclusion that Plaintiff was subjected to an atypical and significant hardship in

---

[22]    The co-pays were deducted from Plaintiff's account sometime around the time period of January 18 – 21, 2013 and Plaintiff alleges that he sent Defendant Bianconi a request on January 22, filed Grievance 445874 on January 26 (relating to the confiscation/theft of his property), and sent another request to Defendant Bianconi on January 28.

relation to the ordinary incidents of prison life during his time the RHU as a result of the allegedly falsified misconduct reports or procedural errors at the hearing. See Sandin v. Conner, 515 U.S. 472, 486 (1995); Gay v. Shannon, 211 Fed. App'x 113, 116 (3d Cir. 2006) ("Because [the plaintiff] was not deprived of a protected liberty interest, he failed to state a due process claim based upon alleged procedural errors at his hearing or the alleged false charge."). As such, to the extent that Plaintiff has attempted to raise a procedural due process claim against any of the Defendants, such a claim fails as a matter of law.

5.   Fourteenth Amendment – Equal Protection Clause

The amended complaint is replete with generalized allegations that the Defendants took actions which violated Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause requires that all people similarly situated be treated alike. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). There are no allegations in the amended complaint asserting that Plaintiff was treated differently than any other similarly situated inmates. "Where there is no discrimination, there is no equal protection violation." Tillman, 221 F.3d at 424. Consequently, because Plaintiff fails to allege that any of the Defendants' actions were motivated with a discriminatory purpose or had a discriminatory effect on Plaintiff, all of Plaintiff's claims for equal protection violations should be entirely dismissed.

6.   Sections 1985 and 1986

In conclusory fashion, Plaintiff alleges throughout the amended complaint that several of the Defendants conspired to deprive Plaintiff of various constitutional rights in violation of 42 U.S.C. §§ 1985(3) and 1986. Section 1985(3) prohibits actions taken by two or more persons "for the purpose of depriving either directly or indirectly, any persons or class of persons of the

equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). To establish a claim under § 1985(3), a plaintiff must show "(1) a conspiracy; (2) motivated by a racial or class-based discriminatory animus designed to deprive any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person, property, or the deprivation of any right." Lake v. Arnold, 112 F.3d 682, 685 (3d Cir.1997). The first element is lacking because the amended complaint contains no factual allegations to support the conclusory assertions therein that the various Defendants conspired with each other. Such unadorned speculation is not entitled to the assumption of truth. Additionally, Plaintiff has failed to satisfy the second element, as there are no factual allegations whatsoever in the amended complaint that any of the Defendants were motivated by a racial or class-based discriminatory animus designed to deprive Plaintiff to equal protection of the laws. As such, Plaintiff's claims under § 1985(3) fail as a matter of law.

Consequently, Plaintiff's claims under § 1986 likewise fail. A § 1986 claim depends on an underlying violation of § 1985. Thus, "if the claimant does not set forth a cause of action under the latter, [his] claim under the former must also fail." Rogin v. Bensalem Twp., 616 F.2d 680, 696-97 (3d Cir. 1980). As a result, Plaintiff's claims under § 1986 should also be dismissed.

### 7. Exhaustion under PLRA

Commonwealth Defendants alternatively assert that Plaintiff has failed to exhaust his administrative remedies under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), as to some, but not all, of his claims against many, but not all, of the Defendants. Because failure to exhaust is an affirmative defense which defendants must plead and prove, Small v. Camden Cnty., 728 F.3d 265, 268-69 (3d Cir. 2013), dismissal under Rule 12(b)(6) is only appropriate

where said failure appears on the face of the complaint. <u>Ball v. Famigilio</u>, 726 F.3d 448, 459 (3d Cir. 2013). Here, although the amended complaint makes reference to several grievances and misconducts and Plaintiff's appeals of same, the amended complaint does not provide all of the information that is necessary to make a determination that Plaintiff has failed to exhaust his administrative remedies. Therefore, Defendants may reassert their affirmative defense of failure to exhaust at summary judgment once the factual record is developed.

## III. CONCLUSION

In accordance with the foregoing, it is respectfully recommended that Commonwealth Defendants' motion to dismiss (ECF No. 86) be granted in part and denied in part. It is recommended that this motion be granted as to all claims against the following sixteen Defendants: Wetzel, Varner, Barnacle, Grubb, Rozum, Gehlmann, Hainsworth, Joseph, Barbarich, Cophenour, Bowman, Sledge, Clippenger, Kolesor, Lewis, and Chaney; and that said Defendants be dismissed from this action. It is further recommended that this motion be granted as to all claims asserting violations of the Procedural Due Process Clause of the Fourteenth Amendment, the Equal Protection Clause of the Fourteenth Amendment, and 42 U.S.C. §§ 1985(3), 1986. However, it is recommended that the motion be denied as to (1) the Eighth Amendment claims for denial of the bottom bunk against Defendants Thomas, Bianconi, Cinko, and Ehrhart; (2) the Eighth Amendment claim for denial of an off-site MRI against Defendant Thomas; and (3) the First Amendment retaliation claims against Defendants Cinko, Ehrhart, Bianconi, Bakos, Dupont.

It is further respectfully recommended that Defendant Dr. Mahmud's motion to dismiss (ECF No. 88) be granted in part and denied in part. It is recommended that this motion be granted as to claims against Dr. Mahmud associated with the daily $5.00 co-pay deduction

during Plaintiff's hunger strike.  Additionally, it is recommended that the motion be granted as to all claims asserting violations of the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. §§ 1985(3), 1986.  Further, it is recommended that the motion be denied as to the Eighth Amendment claim related to the lack of provision of an off-site MRI.

In accordance with 28 U.S.C. § 636(b)(1)(B) and (C), Rule 72(b)(2) of the Federal Rules of Civil Procedure, and the Local Rules for Magistrates, the parties may file objections to this Report and Recommendation within fourteen (14) days after being served with a copy of it. Failure to file timely objections will constitute a waiver of any appellate rights. Brightwell v. Lehman, 637 F.3d 187, 193 n. 7 (3d Cir. 2011).

Dated: June 2, 2016.                                           By the Court,

                                                              s/ Cynthia Reed Eddy
                                                              Cynthia Reed Eddy
                                                              United States Magistrate Judge

cc:    **THE HONORABLE KIM R. GIBSON**
       (electronic notification via CM-ECF)

       **CARL WHITEHEAD**
       EK 5805
       SCI Somerset
       1600 Walters Mill Road
       Somerset, PA 15510

       **TIMOTHY MAZZOCCA**
       (electronic notification via CM-ECF)

       **SAMUEL H. FOREMAN**
       (electronic notification via CM-ECF)