IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| CARL WHITEHEAD, | ) ) ) | |
| | ) | Civil Action No. 3:14-cv-51 |
| Plaintiff, | ) | |
| | ) | United States District Judge |
| v. | ) | Kim R. Gibson |
| | ) | |
| DENISE THOMAS, CAPT. BAKOS, | ) | United States Magistrate Judge |
| JOSEPH DUPONT, LT. CINKO, C/O | ) | Cynthia Reed Eddy |
| EHRHART, JOSEPH BIANCONI, and | ) | |
| DR. RASHIDA MAHMUD, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

**Cynthia Reed Eddy, United States Magistrate Judge**

### I.  RECOMMENDATION

This is a civil rights action initiated under 42 U.S.C. § 1983 by *pro se* Plaintiff Carl

Whitehead, an inmate confined at the State Correctional Institution at Somerset.  There are

currently four motions for summary judgment pending before the Court.  Two of the motions

were filed by the above-captioned Defendants: (1) the Commonwealth Defendants, who were

employed at SCI-Somerset during the relevant time period and comprise of Defendants Thomas,

Bakos, Dupont, Cinko, Ehrhart, and Bianconi;[1] and (2) Dr. Rashida Mahmud, who was

employed by the prison's medical contractor and examined/treated Plaintiff during the relevant

time period.[2]  Plaintiff did not directly respond to these motions but instead filed his own

---

[1]  *See* Motion (ECF No. 101) and supporting documents (ECF Nos. 102, 103, 104, 116).
[2]  *See* Motion (ECF Nos. 107) and supporting documents (ECF Nos. 108, 109).

1

motions for summary judgment against these two groups of Defendants.[3] For the reasons that follow, it is respectfully recommended that the Court deny both of Plaintiff's motions and grant both of Defendants' motions.

## II. REPORT

## A. BACKGROUND

In January 2011, when Plaintiff was an inmate at a correctional institution in Virginia, a prison doctor granted him permanent lower bunk status due to injuries in his shoulders. Plaintiff remained at the Virginia institution until February 2012. His medical records indicate that while he was there, he suffered from and received treatment for his chronic shoulder pain, including an x-ray, activity restriction for all sports and weightlifting, shoulder injections, and pain medications.

Plaintiff was transferred to SCI-Somerset in February 2012. Upon arrival, he was given an intake evaluation where he complained of shoulder pain. Although Plaintiff was under a permanent lower bunk order immediately before his transfer, the evaluating doctor at SCI-Somerset completed a form stating that Plaintiff did not have any restrictions or limitations, including the need for a lower bunk. Thereafter, Plaintiff regularly complained of shoulder pain and difficulties climbing up to the top bunk. He was eventually provided lower bunk status at the end of May 2012 for a period of 60 days. The lower bunk status was extended multiple times. He received lower bunk status through at least October 2012, but the records show that he did not have it as of January 2013. In February 2013, Plaintiff made a request to regain it, which was denied. However, there are records showing that he did have lower bunk status in October

---

[3]  *See* Motion against Commonwealth Defendants (ECF No. 110) and Motion against Dr. Mahmud (ECF No. 111). The Commonwealth Defendants and Dr. Mahmud have responded in opposition to these motions. (ECF Nos. 113, 114, 115, 119).

of 2013 and April of 2014.

Aside from the periodic changes involving Plaintiff's lower bunk status, Plaintiff received extensive medical treatment from doctors (mostly Defendant Dr. Mahmud) and PA-Cs at SCI-Somerset. The medical records show that from February 2012 to April 2014, the medical staff examined Plaintiff dozens of times with regard to his persistent and chronic shoulder pain and provided him regular treatment, including numerous x-rays, shoulder injections, physical therapy, and pain medications.

Notwithstanding the extensive monitoring and treatment of Plaintiff's ongoing pain in his shoulders, he claims that the treatment provided was not effective and that he was denied treatment in violation of the Eighth Amendment in two different ways. First, he claims that Dr. Mahmud and Denise Thomas, the Corrections Health Care Administrator ("CHCA") at SCI-Somerset, deprived him of receiving a necessary off-site MRI based on non-medical reasons, *i.e.,* budget concerns. By way of background, Dr. Mahmud scheduled an MRI consult for Plaintiff in October 2012 but cancelled it about a week later and ordered that he attend physical therapy instead.[4] Second, Plaintiff claims that CHCA Thomas deprived him of lower bunk status in the months immediately following his transfer from the Virginia prison.

In addition to the alleged deficient medical treatment, Plaintiff asserts that several of the above-captioned Defendants are liable for unlawfully retaliating against him based on two different incidents. The first incident occurred on January 15, 2013. There, he was issued and

---

[4]  In Dr. Mahmud's concise statement of facts, which Plaintiff has not opposed, she explains that her referral for Plaintiff to have an MRI consult was a recommendation that had to go through multiple levels of approval. The regional medical director approved the referral but the state medical director denied it and implemented an Alternative Treatment Plan ("ATP") for Plaintiff to undergo another course of physical therapy. Thus, because her MRI referral was not approved, Dr. Mahmud cancelled the MRI and scheduled physical therapy in accordance with the ATP.

found guilty on a misconduct for refusing orders to get in the top bunk. Plaintiff claims that Defendants Bianconi, Ehrhart, and Cinko were involved in this incident and they took these actions because Plaintiff had sent Bianconi, who was the unit manager, a request slip a few days earlier questioning why he was removed from the block workers list. As noted above, Plaintiff was not on lower bunk restriction during this time period.

The second alleged retaliatory incident stems from Plaintiff mailing letters with attached grievances to the Pennsylvania State Police (hereafter "the police") in February 2013 complaining that prison officials confiscated and destroyed a substantial amount of his property. When the police returned these letters to SCI-Somerset, it was determined that Plaintiff forged signatures of prison staff on two of the grievances and completely fabricated the other grievance. In March 2013, Defendant Bakos issued Plaintiff a misconduct charging him with, *inter alia*, forgery and "destroying, altering, tampering with, or damaging property." At his hearing on the misconduct, Plaintiff did not dispute that he mailed those grievances to the police but denied that he was the one that altered them, asserting instead that staff members at SCI-Somerset must have altered them. Defendant Dupont did not believe Plaintiff's version of the events, found him guilty of the charged offenses, and sanctioned Plaintiff to 180 days in disciplinary custody. Dupont's findings were upheld at every level of administrative appeal.

## B. STANDARD OF REVIEW

Summary judgment is appropriate if, when "view[ing] the facts in the light most favorable to the nonmoving party and draw[ing] all reasonable inferences in that party's favor," the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007); *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "Material facts are those that could affect

4

the outcome of the proceeding, and a dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Pearson v. Prison Health Svc.*, 850 F.3d 526, 534 (3d Cir. 2017) (internal marks and citation omitted).

Further, because Plaintiff is proceeding *pro se*, the Court is required to liberally construe his filings. *Haines v. Kerner,* 404 U.S. 519, 520–521 (1972). Thus, if the Court can reasonably read Plaintiff's pleadings together with his summary judgment submissions to show an entitlement to relief, the Court should do so despite any failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or the litigant's unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley,* 141 F.2d 552, 555 (3d Cir.1969) (although a filing prepared by a prisoner may be inartfully drawn, it should be read "with a measure of tolerance"). Nonetheless, at the summary judgment stage of the proceedings, the Court is not required to credit any "bald assertions" or "legal conclusions" that are unaccompanied by evidentiary support. *Morse v. Lower Marion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

## C. DISCUSSION

Plaintiff's remaining claims in this case are as follows: (1) Eighth Amendment claim for denial of an off-site MRI against CHCA Thomas and Dr. Mahmud, (2) Eighth Amendment claim for denial of lower bunk status against CHCA Thomas, Bianconi, Ehrhart, and Cinko, (3) First Amendment retaliation claim for denial of lower bunk against Bianconi, Ehrhart, and Cinko, and (4) First Amendment retaliation claim for mailing letters to the police against Bakos and Dupont.[5] Dr. Mahmud argues that Plaintiff failed to properly exhaust his administrative

---

[5] *See* Report & Recommendation (ECF No. 91), Memorandum Order adopting Report & Recommendation (ECF No. 94), and Memorandum Order addressing timely Objections received after the deadline (ECF No. 96).

remedies as to his Eighth Amendment claim against her, so it is barred by the mandatory exhaustion requirement of the Prison Litigation Reform Act ("PLRA"), and that because there are no other claims against her, she is entitled to summary judgment. Commonwealth Defendants also argue that most of Plaintiff's claims are barred under the PLRA's mandatory exhaustion requirement and that the remaining claims are deficient on the merits.

Plaintiff did not file responses in opposition to Defendants' summary judgment submissions. Instead, he filed his own motions arguing that there are no facts preventing the entry of summary judgment in his favor. The Court recommends denying Plaintiff's summary judgment motions at the outset because his version of the facts, at best, present a genuine dispute as to numerous material facts. The Court will nevertheless consider his statements made in the motions, as well as his attached exhibits, in deciding whether Defendants' motions should be granted. The Court will now turn to Defendants' arguments regarding PLRA exhaustion.

### 1. PLRA Exhaustion

The PLRA prohibits prisoners from bringing an action with respect to prison conditions under § 1983 or any other federal law until such remedies as are available are exhausted. 42 U.S.C. § 1997e(a). This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The Supreme Court has construed § 1997e(a) as requiring "proper" exhaustion. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). To properly exhaust, an inmate merely needs to comply with the prison's grievance procedures. *Jones v. Bock*, 549 U.S. 199, 218 (2007). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the

boundaries of proper exhaustion." *Id.* Because "prison grievance procedures supply the yardstick for measuring procedural default," *Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004), inmates who fail to fully complete the prison grievance process are barred from subsequently litigating those claims in federal court. *See, e.g., Booth v. Churner*, 206 F.3d 289 (3d Cir. 2000), *aff'd by* 532 U.S. 731 (2001).

"DC-ADM 804, which governs the grievance and appeals process in Pennsylvania corrections institutions, provides a three-step process, with final review of grievances performed by the Secretary's Office [of Inmate Grievances and Appeals ("SOIGA")]," and "a plaintiff must follow *each* of these steps to exhaust administrative remedies under the PLRA." *Spearman v. Morris*, 643 Fed. App'x 82, 85 (3d Cir. 2016) (citing *Booth*, 206 F.3d at 299; *Jenkins v. Morton*, 148 F.3d 257, 259 (3d Cir. 1998)) (emphasis in original). Against this backdrop, the Court will discuss whether Plaintiff has properly exhausted his administrative remedies as to each of his claims.

### a. Eighth Amendment – Denial of Off-Site MRI

Plaintiff asserts this claim against CHCA Thomas and Dr. Mahmud. It relates to Dr. Mahmud's initial order from October 2012 that Plaintiff be given an MRI consult on his left shoulder, which she cancelled about a week later and ordered that Plaintiff complete physical therapy instead. He claims that the MRI was medically necessary and that it was denied because of budget concerns.

But on the record before the Court, and contrary to Plaintiff's conclusory assertion that he "exhausted all available remedies prior to filing this instant civil action,"[6] it is clear that Plaintiff

---

[6]    Pl.'s Mot. against Dr. Mahmud at ¶ 6 (ECF No. 111) and Ex. F (ECF No. 111-6). Plaintiff's Exhibit F merely consists of paragraphs 28 through 33 of his amended complaint. The only grievance mentioned in these paragraphs is Grievance 412736, which, as discussed in the

did not exhaust any grievance relating to this claim to final review. Plaintiff does not point to any evidence contradicting Defendants' showing that no grievance was filed at any time around October 2012 when Dr. Mahmud cancelled the off-site MRI consultation. The only grievance that Plaintiff filed relating to denial of an MRI was from August 2013, which he did not appeal to final review.[7] As such, Plaintiff is barred from pursuing this Eighth Amendment claim against CHCA Thomas and Dr. Mahmud for denial of an MRI here because he did not properly exhaust it at the administrative level. Because this is the only claim remaining against Dr. Mahmud in this action, she is entitled to summary judgment.

*b. Eighth Amendment – Denial of Lower Bunk Status*

Plaintiff asserts this Eighth Amendment claim for denial of lower bunk status against various Commonwealth Defendants; specifically, Thomas, Bianconi, Ehrhart, and Cinko. Commonwealth Defendants concede that Plaintiff exhausted his administrative remedies for this claim against CHCA Thomas via Grievance 412736.[8] Plaintiff filed this grievance on May 21, 2012 complaining that CHCA Thomas and the medical department failed to respond to two of his request slips and deprived him of receiving lower bunk status, which caused him "to suffer additional discomfort and pain from having to climb in and out of the top bunk." Commonwealth Defendants contend that because this grievance does not mention or pertain to Defendants Bianconi, Ehrhart, and Cinko, Plaintiff has not properly exhausted it against them.

_____

following section, says nothing about denial of an off-site MRI. To be sure, that grievance was filed in May 2012, *i.e.,* several months *before* Dr. Mahmud cancelled the MRI in October 2012.

[7] Comm. Def.s' Ex. 12, Grievance No. 457075 (ECF No. 104-1 at 161). There are no records indicating that Plaintiff appealed this grievance past the second step to the facility manager. *Id.* at 163-63. This is confirmed by a declaration from Heidi Sroka, a superintendent assistant at SCI-Somerset, which Plaintiff did not rebut. Comm. Def.s' Ex. 13, Sroka Decl. (ECF No. 104-1 at ¶ 10, p. 167).

[8] Comm. Def.s' Ex. 4 (ECF No. 104-1 at 106). Although Plaintiff mentions the "SCI-Somerset Medical Department" in this grievance, this claim is only asserted against the Commonwealth Defendants.

The Court agrees.

The PLRA does not contain a "name all defendants" requirement, but prisoners must nevertheless complete the administrative review process in accordance with the relevant procedures in place at the institution. *Jones*, 549 U.S. at 217-18. The Pennsylvania DOC grievance procedures require that the prisoner "identify individuals directly involved in the event(s)," DC-ADM 804, § 1.A.11.b,[9] and failure to do so constitutes a "procedural default." *Spruill*, 372 F.3d at 234-35. Such a procedural default can be excused by the prison, however, if prison administrators respond to the grievance "by identifying the unidentified persons and acknowledg[e] that they were fairly within the compass of the prisoner's grievance." *Id.; Williams v. Beard*, 482 F.3d 637, 639-40 (3d Cir. 2007); *Robinson v. Johnson*, 343 Fed. App'x 778, 782 (3d Cir. 2009); *Tenon v. Dreibelbis,* 606 Fed. App'x 681, 687 n. 5 (3d Cir. 2015). But where the prisoner does not identify a defendant in the grievance and there is no indication in the record that prison administrators knew that the defendant was involved in the incident, the prisoner has failed to exhaust his administrative remedies. *Byrd v. Shannon*, 715 F.3d 117, 127 (3d Cir. 2013); *Johnson v. Townsend*, 314 Fed. App'x 436, 442-43 (3d Cir. 2008).

Here, Defendants Bianconi, Ehrhart, and Cinko were not mentioned by Plaintiff in this grievance or in any of his appeals, they were not mentioned by any prison administrators in the

---

[9] The parties have not provided the Court with a copy of the specific grievance procedure that was in place at the time of this incident. However, the version quoted by the Court in the body has been in place since 2010. *Compare Byrd v. Shannon*, 715 F.3d 117, 127 n. 5 (3d Cir. 2013) ("The policies of the Pennsylvania Inmate Grievance System were amended in 2010. The provision requiring inmates to identify individuals can *now* be found at DC-ADM 804, § 1.A.11, which states, in pertinent part: "The inmate shall identify individuals directly involved in the event(s).") (emphasis added), *With Pa. Dep't of Corr. Website*, DC-ADM 804, § 1.A.11 (Effective Date: May 1, 2015) ("The inmate shall identify individuals directly involved in the event(s).")
(http://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/804%20Inmate%20Grievances.pdf) (last accessed May 22, 2017).

responses, and there is no indication in the record that they had any role in reviewing or responding to the grievance.[10]  Indeed, Plaintiff did not even allege in the amended complaint that any of these Defendants deprived him of a lower bunk assignment around May 2012, which was the time period complained of in the grievance.[11]  Therefore, the Court agrees with the Commonwealth Defendants that Plaintiff did not properly exhaust his administrative remedies against Defendants Bianconi, Ehrhart, or Cinko via this grievance.

The only other grievance that Plaintiff attempted to appeal to final review relating to this Eighth Amendment claim is Grievance 444433, which he filed on January 17, 2013.[12]  He asserted this grievance against Defendant Ehrhart, Defendant Cinko (identified in the grievance as "Sgt. Sink"), Defendant Bianconi, and non-Defendant Captain Simosko,[13] claiming, *inter alia*, that they ordered him to switch from a lower bunk to a top bunk shortly after they became aware of his shoulder injuries.

Plaintiff attached this grievance and all of the related appeals and decisions to his motion, which he contends establish that he exhausted his administrative remedies.[14]  He is mistaken. Although he attempted to appeal this grievance to the third and final administrative level, he failed to comply with the applicable procedures.  On March 7, 2013, the chief grievance officer of the SOIGA flagged the appeal because Plaintiff did not include a copy of the original grievance in his materials and sent Plaintiff an "action required" notice stating that Plaintiff had 15 working days from the date of the notice to correct the error.  The notice warned that failure

---

[10]  Comm. Def.s' Ex. 4 (ECF No. 104-1 at 123-127).
[11]  Am. Compl. at ¶¶ 28-33 (ECF No. 85).
[12]  Comm. Def.s' Ex. 7 (ECF No. 104-1 at 124-127); Pl.'s Ex. A (ECF No. 110-1).
[13]  *See* Report & Recommendation (ECF No. 91 at n. 1) (explaining that Simosko ceased being a party to this action when Plaintiff filed an amended complaint that deleted all reference to him).
[14]  Pl.'s Mot. against Comm. Def.s' at ¶ 6 (ECF No. 110) (referencing his Ex. A).

to provide the missing information within that timeframe would result in dismissal of the appeal.[15]  The SOIGA did not receive the missing information until April 16, 2013, so it dismissed the grievance for being untimely.[16]  By failing to comply with the deadline set forth in the "action required" notice, Plaintiff did not properly exhaust this grievance.  *See Spearman*, 643 Fed. App'x at 83-84; *Mack v. Klopotoski*, 540 Fed. App'x 108, 112-113 (3d Cir. 2013); *Bricker v. Stowitzky*, 288 Fed. App'x 844, 846 (3d Cir. 2008).

Accordingly, Defendants Bianconi, Ehrhart, and Cinko are entitled to summary judgment on Plaintiff's Eighth Amendment claim for denial of a lower bunk due to Plaintiff's failure to exhaust his administrative remedies against them. The Court will address this Eighth Amendment claim against CHCA Thomas on the merits in the appropriate section below.

### c.  First Amendment Retaliation – Denial of Lower Bunk Status

This claim is asserted against Defendants Bianconi, Ehrhart, and Cinko. The only grievance that Plaintiff attempted to exhaust to final review relating to this claim was Grievance 444433, which is the same grievance that was just discussed in the preceding section.  In addition to his complaints concerning the denial of a lower bunk assignment, Plaintiff complained in this grievance that he was issued and found guilty on a misconduct for refusing the Defendants' order to get in the top bunk.  He asserted that the reason they ordered him to get in the top bunk was not for legitimate purposes but rather because he had sent a request slip to Defendant Bianconi, the unit manager, a few days earlier questioning why he was removed from a block workers list. As just discussed, Plaintiff did not properly exhaust this grievance to final review in accordance with the grievance procedures in place at the prison because he did not comply with the deadline prescribed in the SOIGA's "action required" notice.

---

[15]  Pl.'s Ex. A (ECF No. 110-1); Comm. Def.'s Ex. 8 (ECF No. 104-1 at 137-139).
[16]  *Id.*

Further, to the extent that Plaintiff was required to exhaust the underlying misconduct that forms the basis for this retaliation claim (Misconduct B516900)[17] through the three step review process for disciplinary proceedings set forth in DC-ADM 801, *see Verbanik v. Harlow*, 441 Fed. App'x 931, 934 (3d Cir. 2011); *Mobley v. Lantz*, 2016 WL 1237876, *5 (M.D. Pa. 2016), the Commonwealth Defendants have demonstrated, and Plaintiff has failed to rebut, that he did not appeal it to the final step.[18] Because the record does not contain any other administrative remedies that Plaintiff exhausted to final review regarding this First Amendment retaliation claim against Defendants Bianconi, Ehrhart, and Cinko, he is barred from pursuing it here.

*d. First Amendment Retaliation – Complaint to Police*

In this claim**,** Plaintiff asserts that Defendants Bakos and Dupont issued and found him guilty on a misconduct in March 2013 in retaliation for Plaintiff mailing letters and grievances to the police in February 2013 complaining about the destruction of his property. Commonwealth Defendants do not dispute that Plaintiff properly exhausted this claim, so it will be discussed on the merits below.

Having discussed all of Plaintiff's claims in the context of PLRA exhaustion, the Court will turn to address the remaining claims on the merits.

**2. Eighth Amendment Claim – Denial of Lower Bunk**

In accordance with the above, this Eighth Amendment claim for denial of lower bunk status will only be assessed as to CHCA Thomas. The Eighth Amendment to the United States Constitution prohibits the infliction of "cruel and unusual punishments," U.S. Const. amend XIII,

---

[17] Comm. Def.s' Ex. 7 (ECF No. 104-1 at 124-130).
[18] Comm. Def.'s Ex. 13, Decl. of Sroka (ECF No. 104-1 at 167 ¶ 9).

and requires that prisoners receive access to basic medical treatment. *Estelle v. Gamble*, 429

U.S. 97, 106 (1976). To prevail on a medical needs claim under the Eighth Amendment, the

prisoner bears the burden of establishing "acts or omissions sufficiently harmful to evidence

deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 92, 106 (1976).

Our Court of Appeals recently reiterated:

> As our precedent makes clear, "a non-medical prison official"
> cannot "be charge[d] with the Eighth Amendment scienter
> requirement of deliberate indifference" when the "prisoner is under
> the care of medical experts" and the official does not have "a
> reason to believe (or actual knowledge) that prison doctors or their
> assistants are mistreating (or not treating) a prisoner." *Spruill*, 372
> F.3d at 236; *see also* [*Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d
> Cir. 1993)] (holding that non-physicians cannot "be considered
> deliberately indifferent simply because they failed to respond
> directly to the medical complaints of a prisoner who was already
> being treated by the prison doctor").

*Pearson v. Prison Health Serv.*, 850 F.3d 526, 543 (3d Cir. 2017).

Courts in the Third Circuit have recognized that CHCAs are "undisputably

administrators, not doctors," and, therefore, under *Spruill, supra*, "will generally be justified in

believing that the prisoner is in capable hands" if the "prisoner is under the care of medical

experts." *Thomas v. Dragovich¸* 142 Fed. App'x 33, 39 (3d Cir. 2005); *see also Fantone v.*

*Herbik*, 528 Fed. App'x 123, 128 n. 6 (3d Cir. 2013); *Roberts v. Tretnick*, 2014 WL 4218249,

*3-4 (W.D. Pa. 2014); *McEachin v. Wilson*, 2009 WL 5206008, *13 (W.D. Pa. 2009). In this

regard, Commonwealth Defendants provided a declaration from CHCA Thomas where she

averred as follows:

1. I formerly was employed by the Commonwealth of Pennsylvania,
   Department of Corrections at SCI-Somerset as the Corrections
   Health Care Administrator (CHCA). My last date of employment
   was March 15, 2013.

2. The CHCA is an administrative position. As CHCA, I did not
   determine the medical care an inmate receives or whether an

13

inmate receives lower bunk status. Health care decision and decisions on lower bunk status are made by health care providers, not the CHCA. Similarly, decisions on what diagnostic tests, such as an MRI, an inmate receives are made by health care providers, and not by me as the CHCA.

3. I have reviewed a request slip sent to me by Inmate Whitehead on May 14, 2012 concerning bottom bunk status. I responded "You do not meet the criteria for bottom bunk." In responding this way, I relied on his medical records and/or speaking to practitioners to determine his status. As CHCA, I did not make the decision myself.[19]

Commonwealth Defendants also attached a declaration from CHCA Thomas' successor, Brian Hyde, the current CHCA at SCI-Somerset, similarly averring, in relevant part, the following:

The CHCA, both now and when Ms. Thomas held that position, is an administrative position. The CHCA does not determine the medical care an inmate receives or whether an inmate receives lower bunk status. Health care decisions and decision on lower bunk status are made by health care providers, not the CHCA . . .[20]

Plaintiff did not oppose Commonwealth Defendants' inclusion of these declarations nor has he controverted their substance that CHCA Thomas deferred to the health care providers at SCI-Somerset regarding decisions on whether inmates, including Plaintiff, met the criteria for lower bunk status.[21] It is undisputed that during the relevant time period (from February 2012 until the end of May 2012) no health care provider at SCI-Somerset determined that Plaintiff qualified for lower bunk status. However, Plaintiff contends that CHCA Thomas nevertheless

---

[19] Comm. Def.s' Ex. 15, Decl. of Denise Thomas (ECF No. 116-1 at 4-6).
[20] Comm. Def.s' Ex. 2, Declaration of Brian Hyde at ¶ 3 (ECF No. 104-1 at 98). This declaration was supplemented by Commonwealth Defendants at Ex. 14 (ECF No. 116-1 at 1-3).
[21] This is so notwithstanding that the Court warned him in the Case Management Order of the opposition requirements of Local Rule 56.C and "that, pursuant to Local Rule 56.E, alleged materials set forth in the moving party's Concise Statement of Material Facts . . . which are claimed to be undisputed, will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party." (ECF No. 99 at 3-4).

violated the Eighth Amendment because she knew that, contrary to what the health care providers at SCI-Somerset had determined, a doctor in Virginia where he was previously confined placed him on a "permanent" lower bunk order more than a year earlier. This argument is without merit.

Nothing in the record suggests that CHCA Thomas knew or had reason to believe that Plaintiff was not in capable hands when he was under the care of the health care providers at SCI-Somerset or that they were mistreating him by denying him a lower bunk assignment. *See Spruill*, 372 F.3d at 236; *Thomas*, 142 Fed. App'x at 39. The mere fact that Plaintiff's former doctor in Virginia issued a conflicting order more than a year earlier does not change this conclusion. As a non-medical prison official, CHCA Thomas was not required to disregard the medical judgment of the health care providers that were regularly treating Plaintiff at the time in question simply because a stale order from an out-of-state doctor said otherwise. *See Matthews v. Pa. Dep't of Corr.*, 613 Fed. App'x 163, 170-71 (3d Cir. 2015). Because it is undisputed that CHCA Thomas relied on the determinations made by the health care providers at SCI-Somerset as to whether Plaintiff met the criteria for lower bunk status and there are no facts in the record to suggest that doing so was not justified, CHCA Thomas is entitled to summary judgment. *See Spruill*, 372 F.3d at 236; *see also Tenon*, 606 F. App'x at 688 (affirming summary judgment in favor of a CHCA who submitted an affidavit averring that he was responsible for the "overall *administrative* operation of the Health Care Department at SCI–Smithfield" but "not responsible for overseeing and approving the findings and recommendations of doctors and physicians assistants regarding treatment, medication or diets") (emphasis in original).

### 3. First Amendment Retaliation – Complaint to Police

To establish a *prima facie* case of First Amendment retaliation in the prison context, the

plaintiff must establish that he engaged in constitutionally protected conduct, the prison officials caused him to suffer an adverse action, and his constitutionally protected conduct was a substantial or motivating factor in the prison officials' decision to discipline him. *Rauser v. Horn*, 241 F.3d 330, 331 (3d Cir. 2001). Even where the plaintiff establishes a *prima facie* case of retaliation, however, "prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Id.* at 334. Commonwealth Defendants do not challenge whether Plaintiff established a *prima facie* case of retaliation, and instead argue that because there was such overwhelming evidence of guilt supporting the underlying misconduct, they would have taken the same action against Plaintiff regardless of any protected activity.

In general, "most prisoners' retaliation claims will fail if the misconduct charges are supported by the evidence" because courts afford prison officials "great deference" in the context of prison disciplinary proceedings. *Watson v. Rozum*, 834 F.3d 417, 425 (3d Cir. 2016) (quoting *Carter v. McGrady*, 292 F.3d 152, 158 (3d Cir. 2002)). To determine whether the prison officials' discipline of the prisoner was within the bounds of their broad discretion, courts evaluate the "quantum of evidence" of the underlying misconduct charges. *Id.* at 426. Prison officials are entitled to summary judgment for disciplining a prisoner, even if their actions were motivated by animus, so long as the quantum of evidence shows that the prisoner committed a "clear and overt" violation of prison policy. *Carter*, 292 F.3d at 159. On the other hand, prison officials are not entitled to summary judgment where the prisoner's misconduct was not such a clear and overt violation of prison policy that a reasonable fact finder could conclude that he was not punished in furtherance of a legitimate penological interest but instead for engaging in the protected conduct. *See Watson*, 834 F.3d at 426.

Under this framework, prison officials satisfy "their burden of presenting a 'quantum of evidence' of misconduct" where the misconduct report "include[s] 'a meaningful written statement of the evidence relied on and the reasons for the action taken.'" *Williams v. Folino*, 664 Fed. App'x 144, 148-49 (3d Cir. 2016) (citing *Watson*, 834 F.3d at 426 and quoting *Dyson v. Kocik*, 689 F.2d 466, 467 (3d Cir. 1982)).  On March 20, 2013, Defendant Bakos issued Plaintiff a misconduct accusing him of mailing three forged/altered grievances to the police about one month earlier.[22]  After Plaintiff responded to the misconduct in writing, the misconduct was dismissed without prejudice by the hearing examiner, Defendant Dupont, on March 25, 2013, with a notation indicating that the reason was "Based on report."[23]

The following day, Defendant Bakos filed a new misconduct against Plaintiff based on the same incident with an additional charge for "destroying, altering, tampering with or damaging property."[24]  Defendant Bakos' version of the events in the misconduct provides the following:

> On February 17, 2013 I/M Whitehead mailed a letter with 3 attached grievances to the Pennsylvania State Police.  PSP returned this information back to SCI-SMR.  A review of grievance numbers 444433, 445874, and 447432 w[as] conducted.  The following was found: Grievance #444433 and #445874 contained the forged signatures of DSFM Gehlmann and Facility Grievance Coordinator Heidi Sroka.  In the case of grievance #447432, the entire grievance was found to be falsified.  This Lt. questioned I/M Whitehead on 3-20-13 at which time I/M Whithead admitted he did in fact mail the letter and attached grievances to the Pennsylvania State Police.
>
> Delay in report due to investigation and [the prior misconduct] being DWOP [dismissed without prejudice].[25]

---

[22]  Comm. Def.s' Ex. 10, Misconduct B588190 (ECF No. 104-1 at 142-146).
[23]  *Id.*
[24]  Comm. Def.s' Ex. 11, Misconduct B588194 (ECF No. 104-1 at 147-159).
[25]  *Id.* at 148.

Although Plaintiff disputed the veracity of this misconduct report in writing prior to his hearing,[26] and made similar arguments at his hearing, the hearing examiner did not believe Plaintiff's position and instead found Defendant Bakos to be more credible.[27]  Thus, Defendant Dupont found Plaintiff guilty of forgery and "destroying, altering, tampering with or damaging property" and sanctioned Plaintiff to 180 days in disciplinary custody.[28]  Plaintiff strongly opposed Defendant Dupont's factual findings at every level of administrative appeal, but all three levels of review determined that Dupont conducted the hearing in an appropriate manner, supported his findings with the relevant evidence, and imposed a sanction that was proportional to the offenses.[29]

After reviewing these materials, the Court concludes that Commonwealth Defendants have "satisfied their burden of presenting a 'quantum of evidence' of misconduct" because

---

[26]  *Id.* at 150.

[27]  Specifically, the finding from Defendant Dupont stated the following:

> H/E/ [Hearing Examiner] found: the report of the Lieutenant [Defendant Bakos] and accompanying grievances more credible, more compelling than Whithead's denial that I/M Whitehead sent grievances to the Pennsylvania State Police which were altered from original grievances with signatures of Deputy Gelhmann and Superintendent Assistant Heidi Sroka and those signatures were not those of Deputy Gelhmann or Heidi Sroka and it is more likely than not I/M Whitehead did author, make, complete, execute and authenticate the signatures of Deputy Gehlmann and Heidi Sroka without their authorization constituting #26 4101 Forgery and I/M Whitehead altered the original Grievances with duplicate grievances signing Deputy Gehlmann and Heidi Sroka signatures and it is noted Grievance 447432 was duplicated by Whitehead which contained a different version than the original Grievance 447432 constituting #38 – Destroying, Altering, tampering, with or damaging property.

Comm. Def.s' Ex. 11 at 151-152.

[28]  *Id.* at 152.

[29]  *Id.* at 153-159.

Defendants Bakos and Dupont provided meaningful written statements explaining the evidence they relied on and their reasons for concluding that Plaintiff forged and altered the grievances, especially in light of the fact that Plaintiff admitted to mailing those documents. *See Williams*, 664 Fed. App'x at 149. There can be no doubt that the prison has a legitimate penological interest in punishing this sort of conduct. *See Carter*, 292 F.3d at 154 (describing the prisoner's "unauthorized use of the mails" as an "egregious" violation of prison policy). Therefore, given the quantum of evidence of Plaintiff's misconduct, there is no genuine issue of material fact that the disciplinary action taken was reasonably related to legitimate penological interests, and that Plaintiff would have been disciplined notwithstanding the subject matter of his complaints to the police. *Id.* Defendants Bakos and Dupont are, accordingly, entitled to summary judgment on this claim.

### D. CONCLUSION

For all of these reasons, it is respectfully recommended that both of Plaintiff's motions for summary judgment (ECF Nos. 110, 111) be denied; that Commonwealth Defendants' motion for summary judgment (ECF No. 101) be granted; and that Dr. Mahmud's motion for summary judgment (ECF No. 107) be granted. Any party is permitted to file Objections to this Report and Recommendation to the assigned United States District Judge. In accordance with 28 U.S.C. § 636(b), Fed.R.Civ.P. 72(b)(2), and LCvR 72.D.2, Defendants' Objections are due by June 6, 2017. Because service of this Report and Recommendation is being made on Plaintiff via mail, his Objections are due by June 9, 2017. *See* Fed.R.Civ.P. 6(d). The parties are cautioned that failure to file Objections within this timeframe "*will* waive the right to appeal." *Brightwell v. Lehman*, 637 F.3d 187, 193 n. 7 (3d Cir. 2011) (emphasis in original).

Dated:  <u>May 23, 2017</u>.


                                                      By the Court:

                                                      <u>s/ Cynthia Reed Eddy</u>
                                                      Cynthia Reed Eddy
                                                      United States Magistrate Judge



cc:     **Carl Whitehead**
        EK 5805
        SCI Somerset
        1600 Walters Mill Road
        Somerset, PA 15510

        **All registered users of CM-ECF.**